O

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIBERTY CORPORATE CAPITAL, LTD. | Case No. 2:11-cv-02626-ODW(FFMx) |
| Plaintiff, | **ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [121] AND GRANTING PLAINTIFFS-IN-INTERVENTION'S MOTION FOR PARTIAL SUMMARY JUDGMENT [129], [164]** |
| v. | |
| CALIFORNIA TAU CHAPTER OF SIGMA ALPHA EPSILON FRATERNITY AT CALIFORNIA POLYTECHNIC STATE UNIVERSITY, SAN LUIS OBISPO; SAN LUIS OBISPO; ADAM MARSZAL; JAMIE MERKLER; CHRISTOPHER PERKINS; MATT SILVA; HAITHEM IBRAHIM; MATTHEW FAULKNER; H SCOTT STARKEY and JULIA STARKEY, individually and as co-administrators of the ESTATE OF CARSON L. STARKEY, | |
| Defendants. | |
| ALLIED PROPERTY & CASUALTY INSURANCE CO.; AMCO INSURANCE CO., | |
| Plaintiffs-in-Intervention, | |
| v. | |
| LIBERTY CORPORATE CAPITAL, LTD.; NOVAE SYNDICATES, LTD.; R J KILN & CO., LTD.; OMEGA UNDERWRITING AGENTS, LTD.; BRIT SYNDICATES, LTD; CATLIN INSURANCE CO. (UK), LTD., | |
| Defendants-in-Intervention. | |

## I.   INTRODUCTION

This case stems from an unfortunate event: on December 2, 2008, college freshman Carson L. Starkey died as a result of acute alcohol poisoning after he was hazed at a Sigma Alpha Epsilon, Cal Tau chapter pledge event.  (Catlin Compl. Intervention ¶¶ 1–2.)   In their Motion for Summary Judgment, Plaintiffs Liberty Corporate Capital, Ltd. and Catlin Insurance Co. (UK), Ltd. ask the Court to declare that they owe no insurance coverage to the fraternity members involved in the incident.  (Liberty Mot. 3.)  Likewise, Liberty and Catlin posit that Allied Property and Casualty Insurance Co. and AMCO Insurance Co.—Plaintiffs-in-Intervention and the fraternity members' homeowners insurance companies—are not entitled to contribution.  (*Id.* at 4.)  Allied and AMCO argue—and filed their own Motion for Partial Summary Judgment—that Liberty is obligated to defend the fraternity members and must pay its equitable share of defense costs.  (Allied Opp'n 2; Allied Mot. 1.)  For the reasons below, the Court **DENIES** Liberty and Catlin's Motion and **GRANTS** Allied and AMCO's Motion.[1]

## II.   FACTUAL BACKGROUND

Sigma Alpha Epsilon Fraternity, Inc. ("National") obtained a general liability Fraternity/Sorority Insurance Policy from Certain Underwriters at Lloyd's, London. (Catlin Compl. Intervention ¶¶ 1, 29, Ex. A.)  Several underwriters subscribed to this policy, with Liberty acting as the lead underwriter.  (Allied Compl. Intervention ¶ 6.) National was the named insured; fraternity chapters and undergraduate members could only qualify as insureds if they met a four-part test in the policy's "Who Is Insured" section.   (Catlin Compl. Intervention ¶¶ 31–32.)   Under this test, chapters and undergraduate members would be insured:

---

[1] The individual defendants Matthew Faulkner, Haithem Ibrahim, Adam Marszal, and Christopher Perkins join in Allied and AMCO's Motion for Partial Summary Judgment and their Opposition to Liberty and Catlin's Motion for Summary Judgment.  This joinder was in the entirety and makes no distinction between arguments or causes of action that would be applicable to Allied and AMCO but not to the individual defendants.  Thus, to the extent applicable, the Court's order applies with equal force to these individual defendants.

> (a) only while acting in accordance with the "First Named Insured's" policies and procedures[;] and (b) only while acting in their official capacity[;] and (c) only while acting within the scope of their duties[;] and (d) only with respect to their liability for activities performed by them on behalf of the "Named Insureds", or of insured "Chapters", "Colonies", "Housing Organizations", or "Alumni Organizations." (*Id.* ¶ 32, Ex. A at 32.)

The policy also included two special endorsements that excluded coverage based on hazing and violations of National's alcohol policy. (*Id.* ¶¶ 33–34, Ex. A at 62, 65.) Specifically, the policy's alcohol exclusion stated that chapters, colonies, and undergraduate insureds would not be covered "for any claim arising out of, in any way related to, or in any way resulting from any 'Violation' of 'Fraternity Alcohol Policy.'" (*Id.* ¶ 33, Ex. A at 65.) The hazing exclusion stated that the policy did "not apply to any insured that directs others to participate, and/or participates in hazing," with hazing being defined as:

> [a]ny act or situation created by any insured, with or without the consent of another party, including punishment, harassment, disturbance, embarrassment, intimidation, ill-treatment, discomfort, personal abuse, persistent torment, criticism, or ridicule, of a physical or mental nature, which is imposed upon any person via the execution upon them, their subjection to, or the extraction from them of any unnecessary, needless, unpleasant, disagreeable, difficult, absurd, offensive, or ridiculous, tricks or tasks, including those of a foolish, deceptive, or fraudulent nature. (*Id.* ¶ 34, Ex. A at 62.)

Additionally, Catlin issued to National an excess general liability insurance policy on top of the Lloyd's policy. (*Id.* ¶ 35, Ex. B.) The terms described above equally applied to the excess policy. (*Id.* ¶ 35.)

Prior to the incident, National had written polices and procedures in place. (Supp. Ginocchio Decl. ¶¶ 3–5.) These rules, found in National's *The Fraternity Laws* and its risk management guide entitled *Minerva's Shield*, prohibited hazing,

1  illegal alcohol use, and general alcohol use during the pledge process.  (Liberty Mot.
2  7.)   The California Tau chapter also had its own risk management guide, which
3  contained the same prohibitions against alcohol.  (Burkhouse Decl. Ex. N.)

4      On December 1, 2008, the California Tau chapter of SAE held a "Brown Bag
5  Night" during which Carson Starkey and other pledges were hazed and forced to drink
6  alcohol given to them by their fraternity big brothers.  (Catlin Compl. Intervention
7  ¶¶ 2, 17.)  Starkey died from acute alcohol poisoning as a result of this event.  (*Id.*
8  ¶ 1.)

9      After Starkey's death, Liberty and Catlin denied coverage to the fraternity
10 members and did not defend them in a wrongful death and survival action filed by
11 Starkey's parents.  (Catlin Compl. Intervention Ex. B; Liberty Mot. 8, 11–12.)  This
12 denial was based on a determination that the members did not qualify as insureds
13 under the policy.  (Catlin Compl. Intervention ¶ 3.)  Specifically, Liberty and Catlin
14 denied coverage because the fraternity members violated National's rules regarding
15 alcohol and hazing.  (*Id.* ¶ 3.)

16     Instead, Allied and AMCO defended four of the individual defendants in the
17 underlying   wrongful   death   suit—under   the   individual   defendants'   parents'
18 homeowners insurance—and settled the claims for a sum of $1,450,000.  (Allied
19 Compl. Intervention ¶¶ 30–32.)  Further, Allied and AMCO expended $250,785 to
20 defend the four individual defendants.  (Allied Mot. 24.)

21     Liberty and Catlin now ask this Court to find that the four individual defendants
22 were not covered under the Lloyd's policy (and therefore also not covered under the
23 Catlin excess policy).  In opposition, Allied and AMCO—having paid for the defense
24 and settlement of claims for the four individual defendants—seek a determination that
25 Liberty and Catlin had the duty to defend the four individual defendants.

26             **III.   LEGAL STANDARD**

27     Summary judgment should be granted if there are no genuine issues of material
28 fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(c).  The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and identify specific facts through admissible evidence that show a genuine issue for trial.  *Id.*; Fed. R. Civ. P. 56(c).  Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.  *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative.  *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).  A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968).  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  *Id.*  Where the moving and nonmoving parties' versions of events differ, courts are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## IV.  DISCUSSION

In this case, all of the parties' arguments hinge upon Liberty's potential duty to defend the fraternity members involved in Starkey's death.  Thus, the Court first addresses the dispositive issue of whether the fraternity members qualify as insureds under the Lloyd's policy—triggering the duty to defend.  The Court then turns to the parties' arguments regarding declaratory judgment, equitable contribution, and indemnification.

### A.  Duty to defend

The main issue in both Motions is whether Liberty and Catlin have a duty to defend the fraternity members in the underlying suit filed by the Starkeys.  California law applies because this Court has diversity jurisdiction over the case at hand.  *See*

*Hyundai Motor Am. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 600 F.3d 1092, 1097 (9th Cir. 2010).

    **1.**    *Legal standard*

    The duty to defend in California is broad and requires that an insurer defend its insured against claims for damages that are potentially covered by the issued insurance policy. *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1267 (9th Cir. 2010). To determine the legal question of whether the duty to defend exists, the court compares the policy's terms to the disputed claim. *Montrose Chem. Corp. of Cal. v. Super. Ct.*, 6 Cal. 4th 287, 295 (1993). The court can also take into account extrinsic facts that show the claim is potentially insurable. *Id.* The Supreme Court of California has said that:

> [i]f any facts . . . suggest a claim potentially covered by the policy, [then] the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage. On the other hand, if, as a matter of law, neither the complaint nor the extrinsic facts indicate any basis for potential coverage, the duty to defend does not arise in the first instance. *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 655 (2005).

    Therefore, for an insured to prevail on the duty to defend, it must first establish that the claim may be covered by the policy. *Montrose*, 6 Cal. 4th at 300. If two independent acts are "concurrent proximate causes" of a claim, the claim is eligible for coverage even if only one of the causes is insurable. *Ohio Cas. Ins. Co. v. Hartford Accident & Indem. Co.*, 148 Cal. App. 3d 641, 645 (1983). To refute coverage, the insurer must then conclusively prove that there is no potential for coverage under the policy's terms. *Montrose*, 6 Cal. 4th at 300. Unless and until the insurer meets this burden, it must defend its insured. *Id.* at 299–300.

    **2.**    *No coverage for fraternity members' hazing and alcohol use*

    To determine whether the fraternity members are eligible for coverage, thus establishing Liberty's duty to defend in the first instance, the Court first looks to the

"Who Is Insured" endorsement in the Lloyd's policy. The policy under this endorsement covers, among other things, undergraduate insureds acting in accordance with National's policies, while acting in their official capacity and scope of duties, with respect to activites performed on behalf of National or the fraternity chapters. (Catlin Compl. Intervention ¶¶ 31–32, Ex. A at 32.)

Based on the parties' accounts of Brown Bag Night, the Court finds that the bulk of the activities—such as the actual hazing and alcohol consumption—at Brown Bag Night were not in accordance with National's policies concerning hazing and alcohol use. Further, the hazing and alcohol policy exclusions also disqualify the fraternity members from coverage. (*Id.* ¶¶ 33, 34, Ex. A at 62, 65.) Thus, as to those activities, the fraternity members do not qualify as an insured.

> 3.    *The concurrent event brings the fraternity members back within coverage*

Allied and AMCO posit that Liberty and Catlin's duty to defend arises not from the hazing and alcohol use, but from the independent cause of Starkey's death—the fraternity members' negligence as alleged in the underlying wrongful death lawsuit. (Allied Supp. 2.) As explained above, while some of the acts at Brown Bag Night are clearly not covered by the policy, other acts are potentially covered.

There are two independent acts of negligence asserted against the fraternity members in the underlying wrongful death and survival action: (1) negligence/breach of assumed duty; and (2) negligence/breach of duty to prevent harm. (*Id.* 2.) By taking care of Starkey after he became intoxicated (but failing to provide him with proper medical care), the fraternity members participated in acts that can be construed to be: (a) in accordance with National's policies and procedures; (b) while acting in their official capacity as members of the fraternity; (c) within the scope of their duties as participants and leaders at a fraternity event; and (d) for an activity on behalf of the fraternity (Brown Bag Night). Allied and AMCO argue that these negligent acts were concurrent proximate causes of Starkey's death separate from the acts of hazing and alcohol use that give rise to Liberty and Catlin's duty to defend. (*Id.*)

1    Allied and AMCO's position that the fraternity members are potentially
2    covered is convincing—Allied and AMCO point to two cases to illustrate.  First, in
3    *Kohl*, an insured truck driver collided with a motorcyclist.   *State Farm Fire &*
4    *Casualty Co. v. Kohl*, 131 Cal. App. 3d 1031, 1034 (1982).  The truck driver then
5    negligently dragged the motorcyclist out of the street, causing her further injury.  *Id.*
6    Even though the truck driver's homeowners policy excluded coverage for events
7    "arising out of the ownership and use of an automobile," the court found that the
8    driver's independent negligent act of dragging the motorcyclist and causing her
9    further harm was unrelated to the use of the driver's truck.  *Id.* at 1033–34, 1039.  As
10   such, the act of dragging was covered by the policy even though the two acts were
11   factually related and temporally close.  *Id.* at 1039.

12    Second, in *Ohio Casualty*, a passenger on the insured's boat dove off the boat
13   and into a lake where she was struck by another boat.  148 Cal. App. 3d at 644.
14   Similar to *Kohl*, the insured's negligent supervision of the passenger's swimming
15   activities was independent from the use of the boat.  *Id.* at 648.  And despite the
16   homeowners insurance policy's exclusion for "bodily injury arising out of the use or
17   operation of a watercraft," the insurer had to provide coverage for this accident.  *Id.* at
18   644, 648.

19    As in *Kohl* and *Ohio Casualty*, the fraternity members' negligent acts of caring
20   for Starkey and failing to obtain proper medical care for him are potentially covered
21   by the Lloyd's policy.  Even though the policy has an alcohol exclusion that excludes
22   coverage "for any claim arising out of, in any way related to, or in any way resulting
23   from any 'Violation' of 'Fraternity Alcohol Policy,'" this broad exclusion does not bar
24   coverage of the concurrent proximate causes of Starkey's death.  Like the car accident
25   in *Kohl* and the use of the boat in *Ohio Casualty*, the excluded act of giving Starkey
26   alcohol set the events of Brown Bag Night in motion.  But the fraternity members'
27   subsequent negligent acts played an independent and distinct role in Starkey's death.
28   Just like dragging the motorcyclist in *Kohl* or failing to supervise the swimming

1    passenger in *Ohio Casualty*, the fraternity members failed to care for an inebriated
2    Starkey—but it was worse; they abandoned taking him to the hospital and left him
3    unattended in a utility room.  (Allied Supp. 2.)  Liberty and Catlin's position that any
4    negligence by the fraternity members would necessarily "arise out of" or be "related
5    to" that night's earlier events—and therefore negating any duty that it has to defend or
6    indemnify under the Lloyd's policy—is contradicted by case law.

7            To further support this assertion of separate harm, Allied and AMCO provide
8    an interesting hypothetical:  Starkey could have arrived at Brown Bag Night already
9    drunk.  (Allied Supp. 4–5.)  If the fraternity members then negligently cared for him
10   and caused his death—such as placing him unattended in a utility room—their
11   negligent acts should be covered under the Lloyd's policy.

12           Another hypothetical may be apt here, one where alcohol is taken out entirely:
13   Starkey could have been injured by an exploding microwave at an alcohol-free Brown
14   Bag Night.  If the fraternity members negligently cared for his injuries and placed him
15   unattended in a utility room, this should also trigger coverage under the Lloyd's
16   policy.

17           And as for proximity of the negligence to the initial hazing and alcohol use—
18   the proximity of the facts in this case are farther apart than those in *Kohl* and *Ohio*
19   *Casualty*.  In *Kohl*, the driver's negligent dragging of the injured motorcyclist he just
20   hit was immediately after the accident.  131 Cal. App. 3d at 1034.  And in *Ohio*
21   *Casualty*, the boatowner's negligent supervision of the passenger, who jumped into
22   the water and was injured, was during his operation of the boat.  148 Cal. App. 3d at
23   644.  Here, the fraternity members' negligent acts took place after—likely hours
24   after—the hazing and alcohol use.  (Allied Supp. 2.)

25           So, because both the hazing and the alcohol use itself, which are excluded from
26   coverage, and the fraternity members' negligent acts are concurrent proximate causes,
27   the fraternity members would be insured—and coverage applies under the Lloyd's
28   policy.  This gives rise to Liberty and Catlin's duty to defend.

**B.    Declaratory judgment**

In its first through fourth causes of action, Allied and AMCO seek a judicial declaration of Liberty and Catlin's obligations to defend the four fraternity members under the insurance policies.   Based on the discussion above, the Court hereby declares that Liberty and Catlin owe a duty to defend the four fraternity members and thus **GRANTS** Allied and AMCO's Motion and **DENIES** Liberty and Catlin's Motion.

**C.    Equitable contribution**

Because Liberty and Catlin must defend the four fraternity members, they must pay their equitable share of defense costs because they were unjustified in denying a defense to its insureds.  In an action for equitable contribution, an insurer can obtain pro rata reimbursement from a fellow insurance company when the latter has failed in its duty to defend a common insured.  *Hudson*, 624 F.3d at 1267.

Allied and AMCO submit that they paid $222,383.59 to defend Faulkner, Perkins, and Marszal in the underlying wrongful death suit.  (Allied Mot. 24.)  These Allied/AMCO policies each had a coverage limit of $500,000.  (*Id.*)  Under a pro rata approach, Liberty's policy, which had a limit of $1 million, must cover some of these defense costs.  (*Id.*)  Adding the Allied/AMCO policy limit to the Liberty policy limit results in a combined coverage limit of $1.5 million.  Since Liberty's $1 million limit is 66.7 percent of the combined coverage limit, Liberty owes Allied and AMCO 66.7 percent of the defense costs, or $148,329.86.

Allied also paid $28,401.02 to defend Ibrahim.  (*Id.*)  The limit for Ibrahim's Allied policy was $300,000.  (*Id.*)  Since the combined coverage limit for Ibrahim is $1.3 million, Liberty owes Allied 76.9 percent of this amount, or $21,840.38.  Altogether, Liberty owes Allied and AMCO **$170,170.24** in equitable contribution.

**D.  Duty to Indemnify**

Liberty and Catlin argue that they have no duty to indemnify the fraternity members sued in relation to Starkey's death.   An insurer must defend its insured

against claims that raise the possibility of indemnity.  *Hudson Ins. Co.*, 624 F.3d at 1267.  Because Liberty and Catlin have a duty to defend the fraternity members, they may also have a duty to indemnify the members in the underlying Starkey suit.  But the parties do not specifically address this issue in their Motions.  Thus, the Court leaves this issue for the parties to resolve at a later time.

## V.    CONCLUSION

As explained, the Court concludes that Liberty and Catlin are obligated to defend the fraternity members under the insurance policies issued to National. Accordingly, the Court **GRANTS** Allied and AMCO's Partial Motion for Summary Judgment and **DENIES** Liberty and Catlin's Motion for Summary Judgment.  Allied and AMCO are entitled to **$170,170.24** in equitable contribution from Liberty.

**IT IS SO ORDERED.**

December 3, 2012

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**