O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIBERTY CORPORATE CAPITAL, LTD. | Case No. 2:11-cv-02626-ODW(FFMx) |
| Plaintiff, | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| v. | |
| CALIFORNIA TAU CHAPTER OF SIGMA ALPHA EPSILON FRATERNITY AT CALIFORNIA POLYTECHNIC STATE UNIVERSITY, SAN LUIS OBISPO; SAN LUIS OBISPO; ADAM MARSZAL; JAMIE MERKLER; CHRISTOPHER PERKINS; MATT SILVA; HAITHEM IBRAHIM; MATTHEW FAULKNER; H SCOTT STARKEY and JULIA STARKEY, individually and as co-administrators of the ESTATE OF CARSON L. STARKEY, | |
| Defendants. | |
| ALLIED PROPERTY & CASUALTY INSURANCE CO.; AMCO INSURANCE CO., | |
| Plaintiffs-in-Intervention, | |
| v. | |
| LIBERTY CORPORATE CAPITAL, LTD.; NOVAE SYNDICATES, LTD.; R J KILN & CO., LTD.; OMEGA UNDERWRITING AGENTS, LTD.; BRIT SYNDICATES, LTD; CATLIN INSURANCE CO. (UK), LTD., | |
| Defendants-in-Intervention. | |

## I.  BACKGROUND

On April 9 and April 16, 2013, the Court held a bench trial to consider the remaining question in this case, whether Plaintiffs Liberty Corporate Capital, Ltd. and Catlin Insurance Co. (UK) Ltd., owed a duty to indemnify four Chapter Members, Adam Marszal, Christopher Perkins, Haithem Ibrahim, and Matthew Faulkner, for their actions on the evening of Carson L. Starkey's death.  If Liberty and Catlin owed this duty, then the Court must also decide the appropriate equitable apportionment of settlement payments made on behalf of the four Chapter Members by Plaintiffs-in-Intervention Allied Property & Casualty Insurance Co. and AMCO Insurance Co.

Previously, the Court concluded that Liberty and Catlin were obligated to defend the Chapter Members and awarded Allied and AMCO $170,170.24 in equitable contribution. (ECF No. 201, at 11.)  The Court determined that though the hazing and alcohol use were clearly excluded from coverage, a duty to defend existed because the Chapter Members' negligent acts (e.g., failure to care) were a concurrent proximate cause of death along with the hazing and alcohol use. (*Id.* at 8–9.)  This determination was based on the Court's understanding of the timeline of events ("The fraternity members' negligent acts took place after—likely hours after—the hazing and alcohol use.") and its deference towards Allied and AMCO's alcohol-free hypotheticals ("Starkey could have arrived at Brown Bag Night already drunk [and] then [the fraternity members] negligently cared for him and caused his death."). (*Id.*) This possibility of coverage triggered Liberty and Catlin's duty to defend; but the question whether there actually is coverage remained unanswered. (*Id.* 10–11.)

Thus, the bench trial focused on the events surrounding the Chapter Members' aborted rescue of Starkey upon his collapse from excessive alcohol consumption. This evidence was needed for the Court to determine whether the Chapter Members' alleged negligent acts were a concurrent proximate cause of death that falls within the coverage afforded by the policy.  Under Federal Rule of Civil Procedure 52(a), the Court makes the following findings of fact and conclusions of law.

## II. FINDINGS OF FACT

1. The Brown Bag Night started at approximately 10:30 p.m. and occurred primarily in the garage of Marszal's home.

2. Starkey, along with other pledges, were each separately given large amounts of alcohol. The quantity of alcohol provided to the pledges was designed to cause severe intoxication.

3. The pledges were told to consume all of the alcohol by midnight.

4. Some of the pledges were throwing up after consuming alcohol.

5. Starkey finished the alcohol given to him within 20 minutes.

6. Shortly thereafter, Starkey became unresponsive and unconscious.

7. Some of the Chapter Members concluded that Starkey was extremely intoxicated and proceeded to transport him to a nearby hospital.

8. While still on Marszal's driveway, Starkey spit up and was slightly responsive.

9. After deliberating for about 20 minutes, a decision was made to abort the hospital trip and place Starkey in a bedroom to allow him to sober up.

10. By 11:30 p.m., Starkey was resting in bed and was still alive.

11. Starkey died from alcohol poisoning later that night.

12. Each of the four Chapter Members consumed alcohol during Brown Bag Night.

13. Following Starkey's death, the Sigma Alpha Epsilon ("SAE") Fraternity determined that the Chapter Members violated SAE's alcohol and hazing policies contained in *Minerva's Shield* and the *Fraternity Laws*.

14. Liberty's policy includes an alcohol-use exclusion: "No insurance coverage afforded by this policy shall apply . . . for any claim arising out of, in any way related to, or in any way resulting from any "Violation" of "Fraternity Alcohol Policy." (Ex. 1.) The policy defines "Fraternity Alcohol Policy" as "The written rules, regulations, or procedures regarding alcohol, which are established by the First

Named Insured . . . at the time of loss." (*Id.*)  The policy defines "Violation" as a "Determination by the executive board of the First Named Insured, or legal authority that some breaking, infraction, or breach of 'Fraternity Alcohol Policy' occurred." (*Id.*)

15. The Court adopts additional facts as stipulated in the Final Pretrial Conference Order.  (ECF No. 281.)

### III.  CONCLUSIONS OF LAW

1. There is no coverage under Liberty's policy for any liability arising from the Chapter Members' hazing of or providing alcohol to Starkey.  SAE's determination that there was a violation of its alcohol and hazing policies triggered the alcohol-use exclusion under Liberty's policy.

2. Under the Court's prior duty-to-defend analysis, the Court found that the Chapter Members' negligent acts (e.g., failure to care) were a concurrent proximate cause of death along with the hazing and alcohol use.  This possibility of liability gave rise to the duty to defend under Liberty's policy.  *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1267 (9th Cir. 2010).

3. Based on the evidence presented at trial, the Court finds that though the Chapter Members may have been negligent and contributed to Starkey's death, all of the events that evening were heavily tainted with alcohol:

   a. Starkey became severely intoxicated due to his consumption of alcohol;

   b. The Chapter Members' judgment and perception were clouded by their use of alcohol;

   c. The decision to not take Starkey to the hospital for treatment was based in part on the Chapter Members' desire to avoid blame or reprimand for their own as well as Starkey's alcohol use; and,

   d. The Chapter Members were unable to keep a close eye on Starkey's condition back at Marszal's home because of their own drunkenness.

4. The evidence presented at trial painted a very different picture from the hypotheticals the Court relied on in its duty-to-defend analysis. First, Starkey became intoxicated as a result of the Chapter Members' collective actions. Second, the Chapter Members were themselves intoxicated. Third, the Chapter Members failed to adequately care for Starkey because they were drunk and desired to avoid blame or reprimand due to the alcohol use.

5. With these facts, this case can be distinguished from the cases the Court previous cited. First, in *Kohl*, an insured truck driver collided with a motorcyclist and then negligently dragged the motorcyclist out of the street, causing her further injury. *State Farm Fire & Casualty Co. v. Kohl*, 131 Cal. App. 3d 1031, 1034 (1982). The court found that the driver's independent negligent act of dragging the motorcyclist and causing her further harm was unrelated to the use of the driver's truck, which was excluded under the homeowners policy. *Id.* at 1033–34, 1039. Second, in *Ohio Casualty*, a passenger on the insured's boat dove off the boat and into a lake where she was struck by another boat. *Ohio Cas. Ins. Co. v. Hartford Accident & Indem. Co.*, 148 Cal. App. 3d 641, 644 (1983). The court concluded that the insured's negligent supervision of the passenger's swimming activities was independent from the use of the boat, which was excluded under the homeowners policy. *Id.* at 644, 648. This case is different: alcohol permeates through the entire evening's timeline of events. There were no events that night that could be said to have not involved alcohol. The proximity in time of the aborted rescue attempt to the hazing and drinking further supports the inseparability of the events.

6. Though the Chapter Members' negligent acts were a concurrent proximate cause of death along with the hazing and alcohol use, these negligent acts nevertheless arise out of, are related to, and result from the Chapter Members' "Violation" of "Fraternity Alcohol Policy." Therefore, the alcohol-use exclusion also applies to any liability arising out of the Chapter Member's negligent acts.

/ / /

## IV.   CONCLUSION

Based on these findings of fact and conclusions of law, the Court concludes that Liberty and Catlin did not owe a duty to indemnify the Chapter Members because all of the events surrounding Starkey's death arose out of, related to, and resulted from the Chapter Member's violation of fraternity alcohol policy.  The Court will enter judgment in accordance with these findings and conclusions.

**IT IS SO ORDERED.**

April 19, 2013

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**